STATE OF LOUISIANA

VERSUS

DAVEON GILMORE

NO. 24-KA-551

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-2656, DIVISION "B"
HONORABLE R. CHRISTOPHER COX, III, JUDGE PRESIDING

August 27, 2025

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Scott U. Schlegel

**AFFIRMED**
    **MEJ**
    **JGG**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Juliet L. Clark

COUNSEL FOR DEFENDANT/APPELLANT,
DAVEON GILMORE
    Prentice L. White

**JOHNSON, J.**

Defendant, Daveon Gilmore, seeks review of the 24th Judicial District Court's judgments convicting him of second degree murder and sentencing him to life imprisonment at hard labor, without benefits. For the following reasons, we affirm his conviction and sentence.

### FACTS AND PROCEDURAL HISTORY

On the morning of February 22, 2022, Dechelle Fradieu saw her schoolmate, Ahmad Howard, walk to the bus stop at Montgomery and Betty Streets in Marrero on his way to John Ehret High School. As she waited for the bus with her sister in a parked car, she saw two men with guns come from behind a house and shoot at the victim. At trial, she testified that the shooters were dressed in all black, wore masks, and shot Mr. Howard several times, even after he fell to the ground.

Jefferson Parish Sheriff's Office (JPSO) Deputy Gavin Martin responded to the scene, where he saw the victim with multiple gunshot wounds and found shell casings around the body. Harson White advised JPSO Detective Steven Keller that he looked out of his window on Julie Street after he heard the gunshots, and saw a Black male in black clothing and gloves run past the back of his house. Mr. White then saw two other males in the front of his house running towards the banks of the canal. Responding deputies were advised that three suspects wearing black hoodies were seen running towards Julie Street, after which they ran towards Mansfield Drive and then a canal bank, which was muddy. Former JPSO Sergeant Colin Dunning gave chase; he testified that the three suspects they were in pursuit of wore dark clothing and carried objects in their hands. Daphne Zeno initially did not recall what she told Det. Keller, but after Sergeant Dunning's bodycam footage was played in court, she testified that from the vantage point of her driveway in a vehicle facing Michael Street, she saw the suspects enter a burgundy Dodge van.

JPSO Deputy David Johnson stopped the burgundy van. The four individuals inside the van were later identified as Defendant, Daveon Gilmore, his co-defendants Orlando Washington and Davon Gilmore, Defendant's fraternal twin brother, and driver Sondriell Williams, Washington's mother. The defendants and the clothing found in the van matched the eyewitnesses' descriptions. Deputy Brandon Johnson arrived a few minutes later and observed the defendants were sweating, had mud on their shoes, and the barrel of a rifle-style firearm otherwise covered by a black jacket. After obtaining a search warrant, JPSO seized several weapons from the van: a fully loaded 9 mm Smith and Wesson M&P firearm was located in the netting of the back of the driver's seat directly in front of where Davon sat; a Glock firearm inside of a red DoorDash delivery bag tucked between the center console and the front passenger seat was located in the vicinity of where Daveon had been seated on the passenger side of the second row of the van; and a Tegra AR15 rifle was tucked along the seat and the side of the van where Washington sat on the third row bench.

Dr. Dana Troxclair determined that the victim's cause of death was multiple gunshot wounds and ruled the death a homicide. Three projectiles and copper fragments were recovered during the autopsy. Jene Rauch, an expert in firearm and toolmark investigation, testified that the casings collected at the crime scene were a ballistics match to the Glock and the Tegra AR15 rifle. The expert also determined that the projectile and fragment specimens collected during the autopsy were fired from the rifle. DNA expert Adriana Perez Washington testified that the DNA of all three defendants was found on both murder weapons. She further testified that the DNA profile obtained from the Glock was at least 100 billion times more likely to have originated from Daveon and two unknown contributors than if it originated from three unknown contributors.

Police also found clothes between the sidewall of the van and the third-row seat of the vehicle: a pair of black sweatpants that were inside out; a black jacket; a black hooded sweatshirt with dirt/mud on it; and a blue ski mask. In the trunk, police found a black memorial sweatshirt for Ja'Marian Price, a homicide victim, whose picture appeared on the front and the back of the sweatshirt. DNA testing results strongly supported the proposition that Washington and Daveon were contributors and moderate support for the proposition that Davon contributed to the DNA found on the blue mask. A pair of gray pants were also found in the vehicle – DNA testing showed strong support for the proposition that Daveon was a contributor to the DNA found on the gray pants.

Ms. Williams advised Det. Keller that she left her son at the twins' home two days earlier. She advised the group planned to attend the funeral of their friend, Ja'Marian Price, that morning. As Ms. Williams was preparing to pick her son up to attend the funeral, he called at approximately 7:35 a.m. to pick him up on Mansfield. Afterwards, one of the twins called and asked her to pick them up on Carmadel. She observed the police activity as she circled the area looking for her son and the Gilmores. She found them on Michael; they quickly entered the vehicle and she drove away. Ms. Williams told the police that she did not own any firearms and she had no knowledge of any guns inside of the van.

JPSO also found four cell phones inside of the van; each belonged to one of the four occupants. Detectives were able to discover the motive for Mr. Howard's murder through their search of the cell phones. Mr. Price was killed nine days prior to Mr. Howard's death. On or around February 16, 2022, communications among the defendants showed them conspire to avenge their associate Mr. Price's murder and identify victim Mr. Howard as their target. Mr. Howard's brother was a known associate of the suspect arrested for Mr. Price's murder. Price was killed by a rival gang member in front of the gang member's residence. The district attorney later

determined that Mr. Price was killed in self-defense and Mr. Howard had nothing to do with the matter. Excerpts from a group thread text message from Washington and Daveon's phones reveal their plan for retaliation. The group chose the victim as the potential target, but acknowledged that the victim was without fault in the conflict; realized that the victim caught the "project bus," or school bus, from the Betty Street Projects on weekday mornings; and noted that Davon had a Smith and Wesson firearm. A text sent to the group right after the February 21, 2022 shooting advised "The project hot" in reference to police activity in the area. Defendant replied with three laughing emojis and entered into the group text at 8:05 a.m. "Police behind us, stop adding me."

Videos were also extracted from the cell phones. A video taken one day before the shooting showed the defendants: Washington was holding the rifle, there was a firearm in Davon's hand, and Daveon was wearing the black hooded sweatshirt retrieved from the van after the homicide. A video extracted from Defendant's cell phone, recorded approximately 14 minutes before the victim was shot, showed the three defendants in front of what appeared to be the housing structures on Betty Street wearing some of the clothing recovered from the burgundy van after it was stopped. Information obtained from his co-defendants' phones placed them both on Julie Street, one block west of Betty Street, approximately 20 minutes before the shooting. A detective pointed out that the trio wore masks in that video, and Daveon and Washington's masks were found in the van after the shooting.

Through intelligence about gang activity and neighborhood feuds, police knew that Mr. Price and the defendants in this case belonged to a gang called "BSY," which stands for "Betty Street Youngins." Videos found on YouTube were entered into evidence. In one, a group named the BSY Girls performed a song with BSY chains around their necks. All three defendants were identified in stills

from the video. A photo of Davon showed him using both of his hands to make a "B" for Betty Street Youngins.

Another YouTube video was obtained from Washington's "Project Baby Ruga" profile. In that video, uploaded in August 2019 according to the time stamp, Washington stated "I keep a stick with me," in reference to a rifle. Davon appeared in the video wearing the same outfit he had on in another video entered into evidence. The detective also explained to the jury that Daveon said in the video, "I don't believe in justice so revenge makes me angry."

An individual who goes by "TShots" posted a video recorded inside of the Betty Street Projects on the website in 2021. A still photograph from the video showed Washington and Defendant making a "B" with their hands. In the video, they referred to wearing masks so they could "beat the case." All three videos were admitted into evidence, and published to the jury.

In June 2022, a grand jury indicted Defendant on the charge of second degree murder of Ahmad Howard in violation of La. R.S. 14:30.1. Defendant pled not guilty at his arraignment. Defense motions to suppress evidence and statements were denied after a hearing. In May 2024, the State filed a Notice of Intent to Introduce Evidence as *Res Gestae* or in the Alternative under La. C.E. art. 404(B) that was granted after a hearing on July 11, 2024.

Defendant's trial counsel sought supervisory review of the trial court's ruling granting the State's "404(B)" motion with regards to the three YouTube videos the State intended to introduce as "evidence of the defendants being members or associated with a group/gang 'Betty Street Youngins' (BSY)." This Court granted the writ in part as to video 1 and denied the writ in part as to videos 2 and 3. *State v. Daveon Gilmore*, 24-K-368, 2024 WL 3823436 (La. App. 5 Cir. 8/15/24). The majority granted the State's application for rehearing in 24-K-368, vacated the ruling as to video 1, and denied the writ. *State v. Daveon Gilmore*, No.

24-K-368, 2024 WL 3863550 (La. App. 5 Cir. 8/25/24), *writ denied, stay denied*, 24-1035 (La. 8/17/24), 390 So.3d 1289 (Johnson, J., dissenting).-Also, in August 2024, Defendant's trial counsel filed a Motion to Sever Defendant for Trial and a Motion to Sever Parties, alleging that that the State could not prove Daveon was associated with any gang activity and claiming the defendants would present antagonistic defenses; the court denied both motions. The district court subsequently denied the Motion to Sever Parties.

On August 19, 2024, the case proceeded to trial before a twelve-person jury. Five days later, the jury found Defendant and his co-defendants guilty as charged. Defendant filed a Motion for New Trial, and then a Motion for Post-Verdict Judgment of Acquittal. The trial court denied Defendant's post-trial motions. Defendant's trial counsel then waived sentencing delays, and the trial court sentenced Defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. After Defendant's timely appeal, he filed a Motion for Reconsideration of Sentence, which the district court denied.

## ASSIGNMENTS OF ERROR

Defendant points to two issues in his assignments of error -- he avers that his pre-trial motions to sever and motion *in limine* (re-urged after opening argument by his co-defendant), to prevent the State from introducing the three YouTube videos into evidence, were improperly denied. Defendant argued that the failure to sever the trials violated his Sixth Amendment rights, would cause confusion among the defendants, and the jury would impute guilt to him based on his association with the other two defendants. He also contends that the admission of the three YouTube videos, introduced as La. C.E. art. 404(B) evidence, during the State's case-in-chief unfairly prejudiced the jury against Defendant because it could have inferred after viewing his performance in the videos that he was a "bad" person or a "person of unfavorable character."

24-KA-551                                    6

The State counters that Defendant failed to prove that the interest of justice required that his case be severed from his co-defendants, or that the district court abused its discretion in denying his motion. Further, it argues that the three YouTube videos offered by the State were properly admitted into evidence pursuant to its La. C.E. art. 404(B) motion. In admitting the videos at trial, the district court ultimately found that the State had laid a proper foundation with regards to authentication, such that the videos were what the State purported them to be. Thus, the State argues that the court did not abuse its discretion in admitting the 404(B) evidence. Further, even if the district court had erred, the State avers the admission of the videos would constitute harmless error, as the guilty verdict was "surely unattributable to any error [due to] the introduction of the video evidence."

## *LAW AND DISCUSSION*

### *Motion to Sever*

Defendant contends that the trial court should have granted the motion based on the likelihood that the jury would confuse the defendants or be tempted to infer guilt to all three of them because of their association with each other and their alleged association with the BSY group. Counsel asserts that DNA testing revealed that only Washington's DNA was found on the Tegra rifle and that ballistic evidence revealed that the rifle was the primary weapon used in the shooting. He also asserts that the witness who saw the shooting testified that there were only two shooters and not three. Further, photographs taken following Defendant's arrest showed him, his twin Davon, and Washington dressed in similar clothing. Counsel argues that the fact that Defendant was in the van at the time of the stop does not mean that he was criminally responsible for the victim's death. He maintains that although his DNA was found on the Glock pistol recovered from the van, the DNA analyst could not determine when Defendant handled the gun. Defendant avers that he and his fraternal twin brother, Davon, not only look alike, but have the same

build and often wear similar clothing. Thus, the motion to sever should have been granted in the interest of justice.

The State responds that the trial court did not err in denying Defendant's motion to sever. None of the defendants testified at the trial. The State claims that instead of alleging that there were antagonistic defenses, Defendant asserts that the ends of justice would have been best served by a severance. It argues that Defendant's allegations that being tried with his twin brother, Davon, would have confused the jury or caused it to infer he was guilty because of their association with the BSY group, have no merit. The State points out that Daveon was not tried with an identical twin brother; rather, he was tried with his fraternal twin brother. Also, it argues it presented overwhelming evidence of Daveon's guilt. Therefore, the State contends Defendant has failed to establish that a severance was required in the interest of justice, or that the trial court abused its discretion in denying the motion.

The trial judge denied Defendant's motion to sever for the same reasons he denied his co-defendants' motions to sever. The court advised Davon when denying his motion to sever that he did not meet his burden. The movant must establish that his co-defendant would, in fact, testify at a separate trial, and the exculpatory nature of the co-defendant's proposed testimony. The judge concluded, " . . .just stating[the co-defendants' defenses were antagonistic] is not sufficient to carry that burden."

In her opening statement, Davon's trial counsel stated, "The evidence in this case will show that Orlando Washington and Daveon Gilmore committed the second degree murder of Ahmad Howard." Counsel for Daveon and Washington objected to the blame-shifting and re-urged their motions to sever. Counsel for Washington objected to Washington being accused of a crime by someone whom

they could not cross-examine in front of a jury. The trial court noted their

objections but overruled them, stating:

> Mr. Gilmore is entitled to present a defense. And if his defense
> is that he is less culpable or not culpable, then he is entitled to
> do so.
>
> For all the reasons that I stated when I denied the motion to
> sever, your objections are overruled. They are noted. And I
> understand that they will be continuing objections and they will
> be overruled on a continuing basis.

Following the convictions of the three defendants, Defendant's trial counsel filed a

Motion for New Trial on September 27, 2024. The motion argued, in part, that the

trial court erred in denying his motion to sever. The trial court denied Defendant's

Motion for New Trial a few weeks later.

> La. C.Cr.P. art. 704 provides the following regarding severance:
>
> Jointly indicted defendants shall be tried jointly unless:
>
> (1) The state elects to try them separately; or
> (2) The court, on motion of the defendant, and after contradictory
> hearing with the district attorney, is satisfied that justice requires a
> severance.

Whether justice requires a severance must be determined by the facts of each case.

*State v. Molette*, 17-697 (La. App. 5 Cir. 10/17/18), 258 So.3d 1081, 1089, *writ*

*denied*, 18-1955 (La. 4/22/19), 268 So.3d 304. The ruling on a motion to sever is

within the sound discretion of the trial court and will not be overturned unless it is

manifestly erroneous and injurious to the defendant. *Id.*

A severance is necessary if the defenses of the co-defendants are mutually

antagonistic to the extent that one co-defendant attempts to blame the other,

causing each defendant to defend against both his co-defendant and the State. *State*

*v. Hicks*, 17-696 (La. App. 5 Cir. 10/17/18), 258 So.3d 1039, 1049, *writ denied*,

18-1938 (La. 4/15/19), 267 So.3d 1123. The defendant bears the burden of proof in

a motion to sever. *State v. Coe*, 09-1012 (La. App. 5 Cir. 5/11/10), 40 So.3d 293,

301, *writ denied*, 10-1245 (La. 12/17/10), 51 So.3d 17. A "mere unsupported

allegation" that defenses will be antagonistic is not sufficient to require a severance. *Hicks*, 258 So.3d at 1049. Furthermore, the fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if defendants are to receive separate trials. Prejudice may occur in a joint trial "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *State v. Williams*, 16-417 (La. App. 5 Cir. 8/30/17), 227 So.3d 371, 395, *writ denied*, 17-1663 (La. 9/14/18), 252 So.3d 483. Justice does not require severance where only the extent of participation of each defendant is at issue. *State v. Duckett*, 12-578 (La. App. 5 Cir. 5/16/13), 119 So.3d 168, 177, *writ denied*, 13-1383 (La. 1/17/14), 130 So. 3d 340 (citing *State v. Gaskin*, 412 So.2d 1007, 1012-13 (La. 1982)). However, where the ends of justice will be best served by severance, it should be granted. *State v. Massey*, 11-357 (La. App. 5 Cir. 3/27/12), 91 So.3d 453, 476, *writ denied sub nom. State ex rel. Massey v. State*, 12-991 (La. 9/21/12), 98 So.3d 332. When a severance is sought before trial, the standard for obtaining a severance is broader because of the speculation as to what the trial evidence will actually be. After trial commences, the standard is stricter because at that time the trial judge is able to analyze the evidence which has actually been admitted. *Williams*, 227 So.3d at 394 n.42.

In reviewing a pretrial motion for severance, the Louisiana Supreme Court, has held that "[i]t is incumbent upon us to review the validity of the ruling without regard to whether at trial substantial other evidence was introduced or whether his conviction would have been a certainty irrespective of the joint trial." *Duckett*, 119 So.3d at 178 (citing *State v. Lavigne*, 412 So.2d 993, 997 (La. 1982)). In *Duckett*, 119 So.3d at 178 (citing La. Prac. Crim. Trial Prac. § 14:25 (4th ed.)), this Court also stated:

If the motion to sever is not made until after the trial commences, the conviction will not be reversed for its denial even if a severance was warranted unless the court finds the defendant 'would probably not have been convicted' at a separate trial. If the motion is made pretrial and denied, the appellate court may not consider the weight of the evidence or the certainty of the defendant's conviction in a separate trial in assessing the validity of the trial court's ruling.

In *State v. Turner*, 365 So.2d 1352, 1354 (La. 1978), quoted by this Court in *Duckett*, 119 So.3d at 179, the Louisiana Supreme Court stated, in pertinent part:

Where it is clear from the record that a co-defendant would give exculpatory testimony if a severance were granted, the denial of a severance is an abuse of discretion. *See*, La. C.Cr.P. art. 704, Official Revision Comment (c)(2). However, the burden is on the movant to establish that the co-defendant would, in fact, testify at a separate trial, and the exculpatory nature of his proposed testimony. *See*, 8 Moore's Federal Practice, § 14.04(4).

In this case, we find that the trial judge did not abuse his discretion by denying Defendant's pretrial motion to sever. Defendant only made general, unsupported arguments that the defenses presented at trial would be antagonistic. He did not meet his burden of proving that trying the co-defendants jointly allowed the jury to consider evidence that would have otherwise been inadmissible against Defendant had he been tried alone.

Further, the district court did not abuse its discretion in again denying Defendant's motion to sever after Davon's counsel's opening argument made clear that he intended to show that Davon did not participate in the group text used to plan the murder, and that he was not one of the two shooters that shot at and killed the victim. But, Davon's theory of the case spoke to his level of culpability. Justice does not require severance where only the extent of participation of each defendant is at issue. *See Duckett*, 119 So.3d at 177. Plus, all of the defendants failed to demonstrate that they would have testified at separate trials, or that their testimony would exculpate them. Further, the evidence offered to prove that all three defendants were members of the Betty Street Youngins would have been admissible whether the defendants were tried jointly or separately.

Based on the foregoing, this Court finds no merit in Defendant's assignment of error alleging the district court erred in denying his motion(s) to sever.

*(Pre-Trial) Motions in Limine*

Defendant also argues that the trial court erred by denying his motion for new trial based on the admission of three YouTube videos that depicted Defendant and his two co-defendants dancing, rapping, and making gestures to music along with several other young people in the neighborhood. He asserts that showing these videos caused the jury to convict Defendant because he was in the van with his co-defendants and wearing black clothing, which he states is generally worn at funerals. Defense counsel contends that the videos encouraged the jury to infer guilt based on the lyrics from these videos and not because he shot, or conspired to shoot, the victim. Counsel maintains that the State's use of the videos to establish that he was a member of the BSY organization was not conclusively settled, nor did they show he was actively involved in the shooting. He argues that these videos should not have been admitted into evidence as they were irrelevant and prejudicial. Further, the videos were not closely connected to the instant crime as they were recorded months or years before the shooting. Defendant also contends that the State was unable to authenticate the date of the recordings, or when they were posted.

Before trial, the State filed "State's Notice of Intent to Introduce Evidence as Res Gestae or in the Alternative under La. C.E. Article 404(B)." In its notice, the State proclaimed its intent to introduce evidence of the co-defendants being members, or associated with, a group/gang known as the "Betty Street Youngins" (BSY) before and during the moments leading up to the murder. The State averred that it intended to introduce this evidence through text messages, witness testimony, and rap videos. Specifically, the State said that it intended to introduce evidence that the murder in the instant case was a gang retaliation murder for the

killing of Ja'Marian Price, a member of BSY, that occurred nine days prior. On June 11, 2024, Davon's trial counsel filed an opposition to the State's motion. In her opposition, she argued that the State should not be allowed to introduce evidence of *res gestae*/other alleged crime or bad acts because this evidence was not evidence of *res gestae*/other alleged crime or bad acts. Defendant's trial counsel filed a motion to adopt Davon's opposition, which argued that the evidence was not *res gestae*, the State had not met its burden regarding the exception it intended to use as justification under La. C.E. art 404(B), the State failed to establish that the alleged prior bad act was actually at issue relative to Davon, and this evidence was far more prejudicial than probative.

At the hearing on the motion, counsel for all three defendants made their respective arguments. Davon's counsel asserted that the rap videos were prejudicial, they were disproportionately used against defendants of color, and the State did not have to prove motive.

Defendant's counsel adopted the arguments of Davon's counsel and also argued that rap videos were art, the point of rap videos was to "assume an identity" different from their "real life persona", they were just performances, and the First Amendment protected this type of expression, "an outlet for fantasies and venting." His counsel further argued that the State "failed to establish that the alleged prior bad acts were evidence, or relevant to his client." Washington's counsel adopted the written opposition of Davon's counsel and his co-defendants' arguments and reiterated that the Louisiana State Constitution provided greater protections for speech than the U.S. Constitution and the First Amendment.

The prosecutor responded at the hearing that the purpose of introducing the *res gestae* or "404(B)" evidence was to show the crime committed was "not a random shooting of a young kid," but rather a "targeted hit while people were surrounding" the victim, and no one else got injured. She contended that if she was

only allowed to introduce evidence that a fifteen-year-old boy who was not connected to the defendants was gunned down for no reason, that would not make sense to the jury, and the narrative would be incomplete without the evidence in question. The prosecutor asserted that in *State v. Lewis*, 16-1361, p. 1 (La. 7/19/16), 195 So.3d 1206, rap videos clearly fall under "404(B)" evidence, and the evidence in question was relevant and admissible.

The district court viewed the rap videos and the photograph on the flash drive, then granted the State's motion, ruling that the evidence would be admissible as *res gestae* and under Article 404(B). The judge observed:

> The photograph allegedly is of Daveon Gilmore and Orlando Washington, what is alleged to be a gang sign. And the three videos include lyrics regarding "sticks" or "guns," "empty clips," "dead bodies lined with chalk," and wearing "masks to beat the case."
>
> I do agree with the State's position that the evidence sought to be introduced at trial is so closely connected with the alleged criminal conduct that it constitutes *res gestae* or part of the "things done." This evidence will be admissible for purposes of "narrative completeness," without which the State's case would lose its narrative momentum or cohesiveness. It completes the story by providing context to the events in question.
>
> Alternatively, as the State correctly argues, Article 404(b) of the Code of Evidence provides that the evidence or that evidence such as this, which the State intends to introduce at trial, also may be admissible for purposes other than a defendant's character or propensity to commit a crime. It may be admissible to prove motive, intent, preparation, plan, knowledge, and/or identity.
>
> As I stated a moment ago, more than once, the prosecution's theory in this case is that the defendants killed the victim in retaliation of another killing of a rival gang member that occurred only nine days before the murder at issue. I have concluded that the photograph and videos the State seeks to introduce into evidence at trial regarding the defendant's "gang affiliation," and any law enforcement testimony regarding the same would be relevant and admissible to show motive, intent, preparation, plan, knowledge, and identity.
>
> In addition, I have also performed the balancing test provided for in Article 403 of the Code of Evidence, and I find that the evidence the State seeks to introduce to be relevant and that its probative value is not outweighed by the danger of unfair prejudice to Misters Gilmore, Gilmore, and Washington. Of course, the evidence will be prejudicial

to the defendants, however, I find that it will not be unduly or unfairly prejudicial to them.

At trial, Det. Keller identified State's Exhibit 102 as a USB containing the three rap videos and still shots from the videos he discussed during his testimony. After a lengthy hearing outside the presence of the jury, the district court also found that the State laid a proper foundation with regard to authentication of the videos. The judge then admitted the videos into evidence, and they were played for the jury.

The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because the defendant has committed other such crimes in the past. *State v. Thomas*, 19-582 (La. App. 5 Cir. 7/29/20), 300 So.3d 517, 526, *writ denied*, 20-1503 (La. 3/2/21), 311 So.3d 1053. However, while the State may not admit evidence of other crimes to prove the defendant is a person of bad character, evidence of prior crimes may be admitted if the State establishes an independent relevance aside from proving the defendant's criminal character. *State v. Frickey*, 22-261 (La. App. 5 Cir. 3/1/23), 360 So.3d 19, 49, *writ denied*, 23-468 (La. 11/8/23), 373 So.3d 59. Evidence of other crimes, wrongs, or acts is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct, formerly referred to as *res gestae*, that constitutes an integral part of the act or transaction that is the subject of the present proceeding. *Id. See also* La. C.E. art. 404(B)(1). *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. *State v. Rodney*, 19-195 (La. App. 5 Cir. 10/23/19), 282 So.3d 395, 403. The *res gestae* doctrine is designed to allow the story of the crime to be told in its entirety by proving its immediate context of

happenings in time and place. *Id.* Close connexity in time and location is required between the charged and uncharged conduct to ensure that "the purpose served by admission of the other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v. Smith*, 23-263 (La. App. 5 Cir. 12/27/23), 379 So.3d 206, 212. The test of whether *res gestae* evidence is admissible is not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. *Id.*

Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. *Frickey*, 360 So.3d at 50. In order for other crimes evidence to be admitted under La. C.E. art. 404(B)(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. *State v. Lawson*, 08-123 (La. App. 5 Cir. 11/12/08), 1 So.3d 516, 525-26. The State is only required to make some showing of sufficient evidence to support a finding that the defendant committed the other independently relevant acts. *State v. Breaux*, 22-581 (La. App. 5 Cir. 5/10/23), 366 So.3d 727, 736 (citing *State v. Taylor*, 16-1124, 16-1183 (La. 12/1/16), 217 So.3d 283, 291-292). Additionally, the probative value of the extraneous evidence must outweigh its prejudicial effect. La. C.E. art. 403; *State v. Shorter*, 23-128 (La. App. 5 Cir. 11/29/23), 377 So.3d 421, 436, *writ denied*, 23-1669 (La. 5/29/24), 385 So.3d 704. The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. *State v. Miller*, 10-718 (La. App. 5 Cir. 12/28/11), 83 So.3d 178, 187, *writ denied*, 12-282 (La.

5/18/12), 89 So.3d 1191, *cert. denied*, 568 U.S. 1157, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013). Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. *State v. Maize*, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 649, *writ denied*, 17-1265 (La. 4/27/18), 241 So.3d 306.

In *Taylor, supra*, the supreme court found that while the rules of evidence were relaxed in a pretrial hearing to determine what evidence may be offered at trial, the State would still be required to adhere to the rules of evidence when presenting evidence of the "404(B)" incident at trial. The supreme court further found that should the State not properly present competent evidence at trial, the trial court may exclude the other crimes evidence at that time. *Taylor*, 217 So.3d at 294.

Upon review, we find that the State presented competent evidence of the videos and still shots at trial, and therefore, the trial court did not abuse its discretion by admitting that evidence at trial. Further, we find no evidence introduced at the trial calls into question this Court's prior writ dispositions.

At trial, Detective Keller explained that he knew Mr. Price was associated with the BSY gang through gang intelligence gathered over a period of time by many detectives. He stated that he logged the videos he located that included the defendants as evidence. Detective Keller testified as to what each of the three rap videos and still shots from those videos depicted, and he identified the three defendants in still shots from those videos. Upon review of the trial transcript, we agree with the district court's finding that the State laid a proper foundation with regard to authentication of the videos and the still photos. As the district court stated,

> We do have testimony from this Detective who stated that he Googled or found these videos on the Internet. He didn't need a whole lot of information to do so. With the information that he was provided

from another detective, he was able to find these videos and apparently they are publicly available.

****

In October of 2021, the Fifth Circuit Court of Appeal, here in Louisiana in a civil case, which was titled *Rhodes versus Amko Fence and Steel Company*, this case is found at 329 So.3d [1112, 1127] it talks about authentication and what authentication is. At page 118 of the case, the Fifth Circuit stated that, quote, authentication is a process whereby something is shown to be what is purports to be.

Further, even if the trial court erred by admitting the other crimes evidence, an improper reference to other crimes evidence is subject to the harmless error rule, i.e., whether the verdict actually rendered in the case was surely unattributable to the error. *See State v. Nelson*, 02-65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 804-05, *writ denied*, 02-2090 (La. 2/21/03), 837 So.2d 627.

Here, any error the court may have committed by admitting the 404(B) evidence was harmless as the verdicts actually rendered were surely unattributable to the error. The jury was instructed as to La. R.S. 14:30.1(A)(1), which provides that second degree murder is the killing of a human being: When the offender has a specific intent to kill or to inflict great bodily harm. The district court also gave instructions on the law of principals. *See* La. R.S. 14:24.

In this case, the evidence showed that two males shot the victim while he was walking to the bus stop, after which three Black males wearing black hoodies and masks and carrying guns were observed fleeing from the scene and entering a burgundy Dodge van, driven by Washington's mother, that was stopped shortly thereafter. In the vehicle, JPSO found a Glock pistol located near Defendant's seat, a rifle located near Washington's seat, and a Smith and Wesson 9 mm pistol located near Davon. Casings from the Glock and the rifle found in the van were found near the victim at the crime scene and projectiles and fragments from the rifle were found during the victim's autopsy. Additionally, the State's expert indicated that Defendant's DNA was on the Glock and that Washington's DNA was on the rifle.

Further, varying degrees of defendants' DNA was found on the clothing retrieved from the van, and the blue mask contained Washington and Defendant's DNA. Also, the State established that the three defendants were on their way to the funeral of their friend, Mr. Price, on the morning of the murder, and a memorial sweatshirt with Mr. Price's photograph on it was found in the van. Additionally, the defendants' phones were found in the van. Information extracted from the phones showed Washington and Defendant helped plan the murder and that they targeted the victim in a group text. The text messages also indicated that Davon had a Smith and Wesson pistol, the same kind of firearm seen in front of where Davon was sitting in the burgundy van. The three defendants had been observed leaving the area where the homicide occurred in the vehicle. Washington's mother, Ms. Williams told police that she did not own any firearms and she had no knowledge of any guns in the van. The three defendants were observed inside the van, sweating, with mud on their shoes. Also, Ms. Williams testified that none of the defendants had any business being in the Betty Street Projects. However, Detective Keller testified that information extracted from the defendants' cell phones and a video they recorded placed defendants in the area at the time of the crime.

Considering the evidence outlined above, we find that the trial court did not abuse its discretion by admitting into evidence the rap videos and the still shots from the videos under Article 404(B) or as *res gestae* or integral act evidence. Further, even if the district court erred in admitting this evidence, any error was harmless considering the substantial amount of evidence the State presented against Defendant for the jury to consider in determining Defendant either had specific intent to kill or to inflict great bodily harm; or he helped "counsel or procure another to commit" second degree murder. *See* La. R.S. 14:30.1 and 14:24.

Accordingly, we find Defendant's second assignment of error is without merit also.

The Motion for New Trial filed by Defendant after his conviction also argued, in part, that the trial court erred by admitting the other crimes evidence at trial pursuant to La. C.E. art. 404(B).

Pursuant to La. C.Cr.P. art. 851, a motion for a new trial is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. *State v. Paul*, 15-501 (La. App. 5 Cir. 1/27/16), 185 So.3d 188, 198. The decision on a motion for new trial rests within the sound discretion of the trial court and the ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. *State v. Williams*, 18-112 (La. App. 5 Cir. 11/7/18), 259 So.3d 563, 578, *writ denied*, 18-2038 (La. 4/22/19), 268 So.3d 295.

Because we find both of Defendant's assignments of error are without merit, we also find the district court properly denied Defendant's Motion for New Trial.

### *ERRORS PATENT DISCUSSION*

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review revealed no errors patent in this case requiring corrective action.

### *DECREE*

Based on the foregoing, Defendant's conviction and sentence are affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 27, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-551

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
R. CHRISTOPHER COX, III (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          PRENTICE L. WHITE (APPELLANT)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053